UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN P. ADAMS, | ) |
| Plaintiff, | ) |
| vs. | ) Cause No. 1:15-cv-2078-WTL-DKL |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff John P. Adams requests judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Adams's application for Disability Insurance Benefits ("DIB") and Supplemental Security Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, now rules as follows.

### I. PROCEDURAL HISTORY

Adams filed for DIB and SSI on August 31, 2012, alleging he became disabled on February 13, 2012, due to coronary artery disease, syncope, degenerative disc disease, and other disabilities. Adams's application was denied initially on January 9, 2013, and again upon reconsideration. Following the denial upon reconsideration, Adams requested and received a hearing in front of an Administrative Law Judge ("ALJ"). That hearing, during which Adams was represented by counsel, was held on October 16, 2014, before ALJ Belinda J. Brown. The ALJ issued her decision on October 31, 2014, denying Adams's claim. Adams requested review

by the Appeals Council, and the Appeals Council denied the request for review. Adams then filed this timely appeal.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i).[1] At step two, if the claimant does not have a "severe" impairment (*i.e.*, one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled, 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform his past relevant work, he is

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to SSI sections only, with the exception of DIB section cites where they provide information beyond that found in the SSI sections.

not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citation omitted). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176 (citations omitted).

### III.  ALJ BROWN'S DECISION

ALJ Brown determined at step one that Adams had not engaged in substantial gainful activity since February 13, 2012, the alleged onset date. Record at 17. At steps two and three, the ALJ concluded that Adams had the severe impairments of coronary artery disease, syncope, and degenerative disc disease, as well as several non-severe impairments, including diabetes with neuropathy and gastroparesis; symptoms of fecal incontinence, nausea, and vomiting; adjustment disorder, and chronic brain syndrome. R. at 17-19. At step four, the ALJ determined that Adams had the following residual functional capacity ("RFC"):

> [T]he claimant has the [RFC] to perform sedentary work . . . except he can never balance, kneel, crouch, crawl, or climb ladders, ropes, or scaffolds; occasionally

3

climb ramps or stairs; never work at unprotected heights or around dangerous moving machinery; never operate a motor vehicle; and have occasional exposure to vibrations.

R. at 21. The ALJ also determined that Adams was able to perform past relevant work as an underwriter, as the position is found in the national economy, and district manager, as he had performed the job and as it is found in the national economy. R. at 26. Accordingly, the ALJ concluded that Adams was not disabled as defined by the Act.

## IV. EVIDENCE OF RECORD

The ALJ's decision in combination with Adams's brief (Dkt. No. 12) aptly sets forth the medical evidence of record, which need not be recited here. Specific facts are introduced in the discussion section below where relevant.

## V. DISCUSSION

In his brief in support of his Complaint, Adams argues that the ALJ (1) erroneously concluded at step two that Adams's gastroparesis with accompanying fecal incontinence was not a severe impairment; (2) failed to consider the combined effects of Adams's severe and non-severe impairments; (3) erroneously gave little weight to Adams's treating physician's August 2011 opinion and no weight to his subsequent opinions; and (4) erred in her credibility determination by failing to consider Adams's long work history and his effort to continue working while in pain and undergoing surgeries and treatments.

### A. Step Two and RFC

Adams argues that the ALJ erred in finding that his gastroparesis with fecal incontinence was not a severe impairment and that this finding is not supported by substantial evidence. In her decision, the ALJ noted that Adams made frequent trips to the restroom, wore protective undergarments, and complained of diarrhea, nausea, and vomiting. R. at 18. She also

acknowledged that the medical records show that Adams "takes a number of medications for diarrhea, vomiting, and nausea." *Id.* She further acknowledged that a treating gastroenterologist diagnosed Adams with mild gastritis. *Id.* She remarked, however, that "extensive workup of [Adams]'s gastrointestinal tract and colon has been within normal range" and that "all workup has been benign and unsupportive of serious findings." *Id.* As a result, she concluded that Adams's gastroparesis was non-severe. *Id.*

"The Step 2 determination is 'a *de minimis* screening for groundless claims' intended to exclude slight abnormalities that only minimally impact a claimant's basic activities," *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (quoting *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016)); *see also Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). The Seventh Circuit has categorized errors in determining an impairment's severity as harmless as long as the ALJ otherwise finds one severe impairment, continues through the steps in the evaluation process, and "consider[s] all of [the claimant]'s severe and non-severe impairments, the objective medical evidence, [the claimant's] symptoms, and [his] credibility when determining [his] RFC immediately after step 3." *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015); *see also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) ("Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment. Here the ALJ categorized two impairments as severe, and so any error of omission [at Step 2 regarding the severity of other impairments] was harmless.") (emphasis in original) (citations omitted).

The Court need not determine whether the ALJ erred in finding Adams's gastroparesis with fecal incontinence non-severe. Here, the ALJ concluded that Adams had three severe

impairments - coronary artery disease, syncope, and degenerative disc disease. At that point, the ALJ crossed step two's threshold and continued the evaluation process. If the ALJ erred in determining that Adams's gastroparesis with fecal incontinence was not severe, such error will be deemed harmless if the ALJ considered it, along with all of Adams's other severe and non-severe impairments, in making an RFC determination.

Although the ALJ states that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," the ALJ's RFC discussion fails to mention any of Adams's non-severe physical impairments, including diabetes, gastroparesis and symptoms of fecal incontinence, nausea, and vomiting. "[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (citing 20 C.F.R. § 404.1523); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("the ALJ needed to consider the *aggregate* effect of this entire constellation of ailments-including those impairments that in isolation are not severe") (emphasis in original). Because that did not happen in this case, the ALJ must, on remand, consider the combined effects of all of Adams's impairments, both severe and non-severe, in determining his RFC.

### B.     Treating Physician

Adams also argues that the ALJ failed to give proper weight to the opinion of his treating physician, Dr. Bret House. The ALJ afforded Dr. House's early opinions regarding Adams's inability to work "little weight" because his opinion "was out of proportion to his clinical notes and the other objective findings at the time of his statements." R. at 25. The ALJ then gave "no weight" to Dr. House's later opinions "because they are conclusory and strikingly inconsistent

6

with his treatment notes, the claimant's reported activities of daily living, and the lack of treatment advised by treating specialists." *Id.*

The Seventh Circuit describes what is commonly referred to as "the treating physician rule" as follows:

> A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record. If this opinion is well supported and there is no contradictory evidence, there is no basis on which the administrative judge, who is not a physician, could refuse to accept it. But once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider.

*Bates v. Colvin*, 736 F.3d 1093, 1099-100 (7th Cir. 2013) (internal quotation marks and citations omitted). "'If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion.'" *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (quoting *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2))); *see also Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) ("the ALJ should explicitly consider the details of the treatment relationship and provide reasons for the weight given to their opinions"). "If the ALJ discounts the physician's opinion *after* considering these [§ 404.1527(c)] factors, we must allow that decision to stand so long as the ALJ 'minimally articulate[d]' [her] reasons--a very deferential standard that we have, in fact, deemed 'lax.'" *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (emphasis added) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

Adams argues that the ALJ should have afforded special deference, *i.e.*, controlling weight, to Dr. House's opinions because he is his treating physician. Adams also argues that the

ALJ erred by not considering the "checklist factors" found in 20 C.F.R. § 404.1527(c) when she determined that she would not give controlling weight to Dr. House's opinions.

The ALJ does not clearly articulate which of Dr. House's opinions she affords little or no weight.[2] She also does not explicitly examine the factors outlined in 20 C.F.R. § 404.1527(c). Accordingly, the ALJ erred in giving little or no weight to Dr. House's opinions. This is not to say that Dr. House's opinions should receive controlling weight. Rather, on remand, the ALJ should explicitly examine the factors in 20 C.F.R. § 404.1527(c), clearly express which of Dr. House's opinions she believes should receive less than controlling weight, and minimally articulate reasons to support her ultimate conclusion.

Adams also asserts that the ALJ erred in her credibility determination. On remand, the ALJ should evaluate all of Adams's symptoms in accordance with the requirements in Social Security Ruling 16-3p.

## VI. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 1/20/17

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication

---

[2] Context tells the Court that one of the opinions to which the ALJ affords no weight is the "Physical Residual Functional Capacity Assessment" Dr. House completed on August 6, 2014. See Dkt. No. 8-4 at 75-82.

8